UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILFRED RIVERA, JR.,<br>    *Plaintiff*,<br><br>v.<br><br>ZWICKER & ASSOCIATES, P.C.,<br>    *Defendant*. | No. 3:23-cv-00116-MPS |

## RULING ON DEFENDANT'S MOTION TO DISMISS

This case arises from several attempts by Defendant Zwicker & Associates, P.C.

("Zwicker") to collect debts from Plaintiff Wilfred Rivera, Jr. on behalf of American Express.

Rivera, proceeding *pro se*, filed this suit against Zwicker alleging violations of various

provisions of the Fair Debt Collection Practices Act ("FDCPA") as well as several other federal

laws and regulations. Zwicker now moves to dismiss the Complaint for failure to state a claim

under Rule 12(b)(6). For the reasons stated below, I grant Zwicker's motion as to all but one of

Rivera's claims.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The following facts are drawn from Rivera's Complaint as well as documents attached to

his Complaint.[1]  ECF No. 1. These facts are accepted as true for the purpose of this motion.

At various times throughout late 2022 and early 2023, Zwicker sent debt collection

notices to Rivera. *See* ECF No. 1 at 39–40; *see also id.* at 9, 24, 37, 48 (apparently responding to

debt collection notices). Rivera attached one of these notices to his Complaint. *Id.* at 39–40.

The notice informed Rivera that "**Zwicker & Associates, P.C. is a debt collector**" and that it

---

[1] "In considering a motion to dismiss . . . a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Newman Schwartz v. Asplundh Tree Expert Co., Inc.*, 102 F.3d 660, 662 (2d Cir. 1996).

was "trying to collect a debt you owe to AMERICAN EXPRESS." *Id.* at 39 (emphasis in original).  The notice also included information about the credit card account at issue, including the account number and the amount owed.  *See id.*  The notice further advised Rivera that he could "[c]**all or write to us by February 23, 2023, to dispute all or part of the debt**" and that "[i]f you do not, we will assume that our information is correct." *Id.* (emphasis in original).  The notice further explains that "[i]**f you write to us by February 23, 2023,** we must stop collection on any amount you dispute until we send you information that shows you owe the debt." *Id.* (emphasis in original).  Finally, the notice states that Zwicker will provide Rivera with "**the name and address of the original creditor, if different from the current creditor**" if he requested that information.  *Id.* (emphasis in original).

In response to the collection notices, Rivera requested Zwicker to validate the alleged debts for each of the four American Express accounts at issue—the account numbers for which end in 81002, 61000, 02002, and 32009, respectively. *Id.* at 11, 26, 41, 50.  Zwicker responded to each of these requests, explaining that it was "sending copies of statements and any other relevant documentation to serve as validation of debt." *Id.* at 9, 24, 37, 48.  Zwicker's responses indicated that "[t]his communication is from a debt collector.  This is an attempt to collect a debt and any information obtained will be used for that purpose." *Id.*  The letters also stated that Zwicker is a law firm with one or more attorneys admitted to practice in various states, including Connecticut. *Id.*

Attached to the letters were copies of American Express credit card statements for accounts associated with Rivera. *Id.* at 12–23, 27–36, 42–47, 51–54.  The credit card statements for account 81002 indicate that the account was for an American Express "Blue Cash Everyday®" card, *id.* at 12–23, and the statements for account 61000 indicate that the account

was for an American Express "Gold Card," *id.* at 27–36.  The statements for account 02002

indicate that the account was for an American Express "Business Gold Card" and that Rivera

was doing business under the name "GOODY GOODIEZ ENT."  *Id.* at 42–47.  For the last

account, 32009, Zwicker allegedly attached the wrong credit card statements, instead attaching

statements for another of Rivera's GOODY GOODIEZ ENT American Express "Business Gold

Card" accounts ending in account number 01004.  *See id.* at 4, 51–54.

On January 8, 2023, Rivera sent Zwicker a "Notice of Violations Under the FDCPA &

Federal Laws Under Tit[]le 18," in which he outlined his belief that Zwicker's collection

attempts were in violation of various provisions of the FDCPA as well as several other federal

laws and demanded $40,000 to settle his claims.  *Id.* at 59.

Rivera, proceeding *pro se*, filed this lawsuit on January 30, 2023, alleging violations of

numerous provisions of the FDCPA as well as several other federal statutes and regulations,

including the Gramm-Leach-Bliley Act ("GLBA"), the Truth in Lending Act ("TILA"), the

Racketeer Influenced and Corrupt Organizations Act ("RICO"), Regulation B of the Equal

Credit Opportunity Act, Title 16 C.F.R. § 433.3, the Federal Debt Collection Procedures Act of

1990, and Title 18 U.S.C. § 8.  *Id.* at 2–7.  Rivera also argues that Zwicker's collection attempt is

unlawful because Zwicker is not licensed as a debt collector in Connecticut.  *Id.* at 3, 7.

On February 16, Zwicker filed the pending motion to dismiss, arguing that Rivera fails to

plausibly plead any of his claims.  ECF No. 11; ECF No. 12 (Memorandum in Support).  Rivera

filed a one-paragraph response on February 21, ECF No. 16, and then a more detailed response

the following day, ECF No. 18.[2]  Zwicker filed a reply in support of its motion on February 23.

ECF No. 17.

---

[2] On March 6, Rivera filed an additional response, which is identical to his filing on February 22.  *See* ECF No. 19.

## II.   LEGAL STANDARD

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), I must determine whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court accepts as true all of the complaint's factual allegations when evaluating a motion to dismiss, *id.*, and must "draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008).  However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss.  *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (citation omitted).

Although a *pro se* complaint must be liberally construed "to raise the strongest arguments it suggests," *pro se* litigants are nonetheless required to "state a plausible claim for relief." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (internal quotation marks, citations, and alterations omitted).

## III.   DISCUSSION

### A.   Fair Debt Collection Practices Act ("FDCPA")

Rivera alleges that Zwicker has violated several provisions of the FDCPA, including: (1) engaging in prohibited communications concerning his debt under 15 U.S.C. § 1692b, (2) failing to get prior consent to contact him under 15 U.S.C. § 1692c, (3) using "obscene" language in collection attempts under § 1692d, (4) making false or misleading statements under § 1692e, (5)

not providing sufficient validation of his debt under § 1692g, (6) not being authorized to bring a

suit against him under § 1692i, and (7) furnishing deceptive forms under § 1692j.

When evaluating whether collection-related conduct is misleading under the FDCPA,

courts apply the objective "least sophisticated consumer" standard.  *See Clomon v. Jackson*, 988

F.2d 1314, 1318 (2d Cir. 1993).  "Under this standard, a collection notice can be misleading if it

is open to more than one reasonable interpretation, at least one of which is inaccurate."  *Pettaway*

*v. Nat'l Recovery Sols.*, LLC, 955 F.3d 299, 304 (2d Cir. 2020) (per curiam).  But the least

sophisticated consumer standard "will not render debt collectors liable for bizarre or

idiosyncratic interpretations of debt collection letters or unreasonable misinterpretations of

collection notices."  *Id.*  In other words, "the least sophisticated consumer standard still preserves

the concept of reasonableness."  *Rubin v. Montefiore Med. Ctr.*, No. 20-2721-cv, 2021 WL

4538603, at *1 (2d Cir. Oct. 5, 2021).

As an initial matter, the FDCPA only governs the collection of consumer, not

commercial, debts.  A "debt" under the FDCPA "means any obligation . . . of a consumer to pay

money arising out of a transaction in which the money, property, insurance, or services which are

the subject of the transaction are *primarily for personal, family, or household purposes*."  15

U.S.C. § 1692a(5) (emphasis added).  Thus, FDCPA actions must concern the "obligation[s] of a

consumer," while "actions arising out of commercial debts" are not governed by the FDCPA.

*Goldman v. Cohen*, 445 F.3d 152, 154 n.1 (2d Cir. 2006).

One of the accounts at issue here—account 02002—is not plausibly a consumer account.

The credit statements for account 02002 indicate that the account was for an American Express

"Business Gold Card."  *Id.* at 42–47.  Moreover, these account statements show that Rivera

created this account under the business name "GOODY GOODIEZ ENT."  *Id.* (emphasis in

original).  Because the debt associated with account 02002 is not plausibly a consumer debt, the

FDCPA does not plausibly apply to it.  I therefore dismiss all FDCPA claims as to this account.

The other accounts at issue are, at least plausibly, covered by the FDCPA.  Although

Rivera does not explicitly allege that the debts associated with these accounts are consumer

debts, there is no indication in the Complaint or the attached documents that these are business

accounts.  Thus, I must determine whether Zwicker plausibly violated any of the individual

provisions of the FDCPA under which Rivera moves.  I consider each alleged violation of the

FDCPA in turn.

### 1.   Section 1692b

Rivera alleges that Zwicker violated 15 U.S.C. § 1692b(2) because in its initial letters to

him, Zwicker stated that Rivera owed a debt.  *See* ECF No. 1 at 4; *see also id.* at 39 ("We are

trying to collect a debt that you owe to AMERICAN EXPRESS.").  Section 1692b prohibits

certain types of communications between a debt collector and "any person *other than the*

*consumer*," including communication indicating that the "consumer owes any debt."  15 U.S.C.

§§ 1692b, 1692b(2) (emphasis added).  But by the plain terms of the statute, § 1692b(2) does not

cover a letter from a debt collector addressed to the consumer himself.  Rivera does not allege

that Zwicker communicated with a third party concerning his debt.  Therefore, his § 1692b(2)

claim must be dismissed.

### 2.   Section 1692c

Rivera alleges that Zwicker violated 15 U.S.C. § 1692c(a) because it communicated with

him without his permission or the permission of a court.  ECF No. 1 at 5.  That provision

provides that a debt collector may not "[w]ithout the prior consent of the consumer given directly

to the debt collector or the express permission of a court of competent jurisdiction . . .

communicate with a consumer in connection with the collection of any debt" in three specific

circumstances:

> (1) at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. . .;
>
> (2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, . . . ; or
>
> (3) at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication.

15 U.S.C. § 1692c(a)

Rivera seems to misconstrue § 1692c(a) to prohibit a debt collector from communicating

with him under any circumstance unless either he or a court gives the debt collector prior

permission to do so.  But § 1692c(a) only applies to communications in the three enumerated

circumstances listed above.  Rivera does not make any allegation that Zwicker attempted to

communicate with him during one of the situations covered by § 1692c(a), so his § 1692c(a)

claims fail.

### 3.   Section 1692d

Next, Rivera alleges that Zwicker violated 15 U.S.C. § 1692d(2) by using what he calls

"obscene" language in its communications with him.  Section 1692d(2) prohibits debt collectors

from using "obscene or profane language" in connection with the collection of a debt.  Rivera

alleges that the sentence "this is an attempt to collect a debt" is obscene.  I disagree.  "Courts

have interpreted section 1692d(2) to prohibit profanity and obscenity, as well as offensive

language that is akin to profanity or obscenity," such as name-calling, racial or ethnic slurs, and

other similarly offensive derogatory remarks. *Monahan v. NRA Grp. L.L.C.*, No. 3:10-CV-

00638, 2011 WL 3901877, at *2 (D. Conn. Sept. 6, 2011) (internal quotation marks and citations

omitted).  The complained-of language plainly does not qualify as profane or obscene.  In fact, the FDCPA mandates the use of this language, *see* 15 U.S.C. § 1692e(11), and it is unclear how Zwicker or any other debt collector could collect a debt in accordance with the FDCPA without informing a debtor that it is "attempt[ing] to collect a debt."  This claim therefore fails as a matter of law, *see Monahan*, 2011 WL 3901877, at *2 ("A court may rule as a matter of law that particular conduct does not go so far as to violate section 1692d(2)."), and is dismissed.

### 4.   Section 1692e

Rivera alleges that Zwicker made false or misleading statements in violation of 15 U.S.C. §§ 1692e(3), (7), (9), (10), (12), (13), (14).  I disagree.

Section 1692e(3) prohibits "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney."  Section 1692e(9) prohibits "[t]he use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval."  And Section 1692e(13) prohibits "[t]he false representation or implication that documents are legal process."  Rivera alleges that Zwicker violated each of these provisions by stating in communications that it is a law firm.  *See* ECF No. 1 at 4–6; ECF No. 18 at 1.  While it is true that Zwicker notified Rivera that it is a law firm in its responses to his requests for debt validation, *see* ECF No. 1 at 9, 24, 37, 48, Rivera has not made any allegation that these representations were false or misleading.  He has not, for example, alleged that Zwicker is not, in fact, a law firm.  And Rivera has not made any allegation that Zwicker's communications "simulate[] or [are] falsely represented to be [] document[s] authorized, issued, or approved by any court, official, or agency of the United States or any State" or that Zwicker falsely

represented or implied that its communications were legal process.  Because these claims are

supported by nothing more than conclusory allegations, I must dismiss them.

Section 1692e(7) prohibits "[t]he false representation or implication that the consumer

committed any crime or other conduct in order to disgrace the consumer."  Rivera does not make

any allegation that Zwicker falsely represented or implied that he had committed a crime or other

conduct in order to disgrace him.  Rivera's § 1692e(7) claim is therefore dismissed.

Section 1692e(10) prohibits "[t]he use of any false representation or deceptive means to

collect or attempt to collect any debt or to obtain information concerning a consumer."  Though

Rivera's allegations under this provision are not entirely clear, he suggests that one of Zwicker's

notices was misleading because the amount of the debt is stated as a "positive balance," as

opposed to a negative balance, "lead[ing him] to believe [that he would be] paid."  ECF No. 1 at

4.  This interpretation is, however, "bizarre" and "idiosyncratic" given the clear language in

Zwicker's communications that it was "trying to collect a debt that you owe . . . ."  *Id.* at 39; *see*

*also id.* at 9, 24, 37, 48 ("This is an attempt to collect a debt . . . .").  This allegation, thus, does

not support a plausible claim for relief under § 1692e(10), and I dismiss it.

Section 1692e(12) prohibits "[t]he false representation or implication that accounts have

been turned over to innocent purchasers for value."  Rivera alleges that Zwicker has violated this

provision "because [Zwicker] purchased the debt or are partnered with the alleged original

creditor."  ECF No. 1 at 4.  As an initial matter, debt collectors do not violate § 1692e(12) by

"partner[ing]" with creditors to collect debts on their behalf—that is simply what debt collectors

do.  In addition, at no point does Rivera make any plausible allegation supporting his assertion

that Zwicker took ownership of the debt.  This assertion is, in fact, refuted by the documents

attached to the Complaint, in which Zwicker clearly communicated that it is a debt collector and

that it was "trying to collect a debt that you owe to AMERICAN EXPRESS." *Id.* at 39.  Because

Rivera's allegations under § 1692e(12) are conclusory and contradicted by the documents

attached to the Complaint, I dismiss this claim.

Finally, § 1692e(14) prohibits "[t]he use of any business, company, or organization name

other than the true name of the debt collector's business, company, or organization."  Rivera

does not allege that Zwicker & Associates, P.C. is not Defendant's "true name."  Instead, he

suggests that Zwicker violated § 1692e(14) by stating that Rivera owed money to American

Express.  ECF No. 1 at 4.  But § 1692e(14) does not prohibit debt collectors from stating the

identity of the original creditor.  In fact, 15 U.S.C. § 1692g(a)(2) requires creditors to provide

debtors with "the name of the creditor to whom the debt is owed."  Thus, Rivera does not state a

plausible claim for relief under § 1692e(14), and I dismiss this claim.

### 5.   Section 1692g

Next, Rivera alleges that Zwicker's debt validations and verifications were not sufficient

under 15 U.S.C. § 1692g.  Section 1692g(a) requires a debt collector to send the consumer a

written notice containing the following information:

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

Rivera has not pled facts plausibly showing that Zwicker violated § 1692g(a).  Rivera attached one of Zwicker's notices to his Complaint.  *See* ECF No. 1 at 39–40.  This notice contains all the information required by § 1692g(a).  The letter lays out "the amount of the debt" ($1,633.99) and "the name of the creditor to whom the debt is owed" (American Express).  *Id.* at 39.  The letter also advises Rivera that he can "[c]**all or write to us by February 23, 2023, to dispute all or part of the debt**" and that "[i]f you do not, we will assume that our information is correct."  *Id.* (emphasis in original).  Further, the letter explains that "[i]**f you write to us by February 23, 2023,** we must stop collection on any amount you dispute until we send you information that shows you owe the debt."  *Id.* (emphasis in original).  Finally, the letter states that Zwicker will provide Rivera with "**the name and address of the original creditor, if different from the current creditor**" if he requested that information.  *Id.* (emphasis in original).  Thus, the validation notice attached to the Complaint contains all the information required by § 1692g(a) and, therefore, does not plausibly violate § 1692g(a).  While this notice is only one of the four that Rivera challenges, there is no indication in the Complaint that this notice differs materially from Zwicker's other notices.  In fact, at the bottom of the notice, Rivera wrote a handwritten note stating, "same second letter as first," suggesting that this validation notice was the "same" as others Zwicker sent.  *Id.*  Thus, Rivera does not state a plausible claim under § 1692g(a).

Rivera does, however, state a plausible claim under § 1692g(b) as to one of the accounts at issue.  Section 1692g(b) requires, in relevant part, that if a consumer disputes the debt, "the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt

11

collector obtains verification of the debt or a copy of a judgment, or the name and address of the

original creditor, and a copy of such verification or judgment, or name and address of the

original creditor, is mailed to the consumer by the debt collector."  15 U.S.C. § 1692g(b).

Rivera requested Zwicker to verify the alleged debts for each of the American Express

accounts at issue.[3]  ECF No. 1 at 11, 26, 41, 50.  Zwicker argues that Rivera's attempt to dispute

the debt was invalid because debtors have only "thirty days from the receipt of the collection

letter to dispute the validity of the debt or any part of it."  *Gervais v. Riddle Associates, P.C.*, 363

F. Supp. 2d 345, 355 (D. Conn. 2005); *see also Munroe v. Specialized Loan Servicing LLC*, No.

14-CV-1883, 2016 WL 1248818, at *7 (E.D.N.Y. Mar. 28, 2016) ("Because Plaintiff failed to

dispute the validity of the defaulted mortgage debt within the applicable thirty-day period,

Defendants were entitled to assume the debt was valid, and Plaintiff's section 1692g claim fails

as a matter of law.").  It is true that Rivera's requests for debt verification are undated, *see* ECF

No. 1. at 11, 26, 41, 50, and he does not mention in his Complaint whether he made the requests

within 30 days after receiving Zwicker's notices.  But "draw[ing] all reasonable inferences in

favor of" Rivera, *Vietnam Ass'n for Victims of Agent Orange*, 517 F.3d at 115, as I must, I

conclude that it is at least plausible that the requests were timely.

For three of the accounts—61000, 02002, and 81002—Zwicker validated the debts by

sending credit card statements associated with each of the accounts.  Courts in this Circuit have

---

[3] Although Zwicker does not address this issue, courts in this Circuit have explained that "under § 1692g(b), the consumer's right to verification is triggered only upon the debt collector's receipt of a written notice disputing the validity of the debt, *not a mere written request for verification*."  *Nazmiyal v. Sunrise Credit Servs., Inc.*, No. 13-CV-0676, 2014 WL 524406, at *3 (E.D.N.Y. Feb. 7, 2014) (emphasis added).  Here, Rivera only requested Zwicker to validate the debts are issue.  *See* ECF No. 1 at 11, 26, 41, 50.  While ordinarily, such a request would not be enough to trigger Rivera's right of verification, I must read Rivera's Complaint "to raise the strongest arguments it suggests."  *Walker*, 717 F.3d at 124 (internal quotation marks, citation, and alterations omitted).  Here, the strongest argument Rivera's Complaint suggests is that his requests for validation were premised on his dispute of the debts.  This argument is supported by the fact that Rivera explicitly cited 15 U.S.C. § 1692g in his requests for validation, suggesting that he was seeking the protection that the statute provides.  Thus, I conclude that, at this stage, Rivera's pleadings are sufficient to plausibly show that he disputed the debt, trigging the requirements of § 1692g(b).

held that sending credit card statements can provide valid verification of a debt. *See Ritter v. Cohen*, 118 F. Supp. 3d 497, 502 (E.D.N.Y. 2015) (holding that a debt collector sufficiently verified a debt when it sent copies of credit card statements); *see also Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 339, 370 (D. Conn. 2012) ("Verification of a debt requires only that the debt collector obtain a written statement that the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt." (internal quotation marks omitted)).  Because the debts for these accounts appear to have been validly verified and the Complaint contains no other factual allegations supporting these claims, I dismiss Rivera's § 1692g(b) claims as to these accounts.

Based on the Complaint and the attached documents, Zwicker did not, however, validly verify the debt associated with account 32009.  That is because Zwicker allegedly attached the wrong credit card statements to its verification letter as to this account, instead attaching statements for another of Rivera's American Express accounts ending in account number 01004. *See id.* at 4, 51–54.  Plainly, attaching the wrong credit card statements would not qualify as a "written statement that the amount being demanded is what the creditor is claiming is owed." *Derisme*, 880 F. Supp. 2d at 370.  The "purpose of the verification requirement is solely to eliminate the problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." *Gallaher v. US Bank Nat'l Ass'n*, No. 3:14-CV-187, 2016 WL 1118239, at *11 (D. Conn. Mar. 22, 2016) (internal quotation marks, citation, and alterations omitted).  Because Zwicker allegedly attached the wrong credit card statements to its verification letter, it would be impossible for Rivera to be sure that the debt associated with account 32009 is not one that he had already paid.  Rivera's § 1692g(b) claim as to account 32009 therefore survives.

13

### 6.   Section 1692i

Rivera next alleges that Zwicker violated 15 U.S.C. § 1692i(a)(2) because Rivera did not

give Zwicker prior authority to sue him.  ECF No. 1 at 5 ("[W]hen debt is not secured by real

property, ZWICKER & ASSOCIATES can only sue if the contract authorizes the ability for the

debt collector to sue the affiant.").  But § 1692i(a)(2) does not require anything of the sort.

Section 1692i is the venue provision of the FDCPA, and § 1692i(a)(2) merely explains the venue

requirements for any suit brought by a debt collector against a consumer for collection actions

that do not involve interests in real property.  Rivera does not allege that Zwicker has sued him,

much less that it sued him in the wrong venue.  Therefore, I dismiss this claim.

### 7.   Section 1692j

Finally, Rivera argues that Zwicker violated 15 U.S.C. § 1692j.  ECF No. 1 at 4.  Section

1692j(a) provides that:

> It is unlawful to design, compile, and furnish any form knowing that such form
> would be used to create the false belief in a consumer that a person other than the
> creditor of such consumer is participating in the collection of or in an attempt to
> collect a debt such consumer allegedly owes such creditor, when in fact such person
> is not so participating.

Congress passed this provision of the FDCPA to address a practice known as "flat-rating":

> A 'flat-rater' is one who sells to creditors a set of dunning letters bearing the
> letterhead of the flat-rater's collection agency and exhorting the debtor to pay the
> creditor at once.  The creditor sends these letters to his debtors, giving the
> impression that a third party debt collector is collecting the debt.  In fact, however,
> the flat-rater is not in the business of debt collection, but merely sells dunning
> letters.  This bill prohibits the practice of flat-rating because of its inherently
> deceptive nature.

*Franceschi v. Mautner-Glick Corp.*, 22 F. Supp. 2d 250, 256 (S.D.N.Y. 1998) (quoting S. Rep.

No. 95-382 (1977)).

14

Rivera does not plead any facts that Zwicker provided American Express with dunning

letters; in fact, his Complaint asserts that Zwicker itself, not American Express, sent the letters.

*See* ECF No. 1 at 4 ("ZWICKER & ASSOCIATES . . . continued to send debt collection letters

on other . . . accounts."). Rivera does not plead any facts that Zwicker plausibly violated this

provision of the FDCPA, and I therefore dismiss this claim.

**B.      Gramm-Leach-Bliley Act ("GLBA")**

Rivera also alleges that Zwicker violated provisions of the GLBA. *See* ECF No. 1 at 4.

Specifically, he alleges that Zwicker violated 15 U.S.C. §§ 6801, 6802, and 6803(d)(1)(C), each

of which involves the safeguarding of consumers' nonpublic financial information. *Id.* But

"[e]very case to have addressed the issue has held that the GLBA does not provide for a private

right of action." *Farley v. Williams*, No. 02-cv-0667C, 2005 WL 3579060, at *3 (W.D.N.Y.

Dec. 30, 2005) (collecting cases). The act's enforcement provision lists only federal and state

government entities, not private citizens. 15 U.S.C. § 6805(a). Because Rivera does not have a

right to bring claims under the GLBA, I dismiss these claims.

**C.      Truth in Lending Act ("TILA")**

Next, Rivera brings several claims under various provisions of TILA, including 15

U.S.C. §§ 1602, 1605, 1611, 1644, and 18 U.S.C. § 892. *See* ECF No. 1 at 2, 4–5. Zwicker is

not, however, subject to TILA's requirements because "TILA only regulates creditors," *Bentley*

*v. Greensky Trade Credit, LLC*, 156 F. Supp. 3d 274, 296 (D. Conn. 2015), and Zwicker does not

constitute a creditor under the act. In the case of "an open-end credit plan involving a credit

card," such as this one, TILA defines a "creditor" as "the card issuer and any person who honors

the credit card and offers a discount which is a finance charge." 15 U.S.C. § 1602(g). Zwicker

does not fit within this definition. American Express, not Zwicker, is the card issuer here, and

Rivera does not allege that Zwicker "honor[ed] the credit card and offer[ed] a discount which is a finance charge."  Indeed, "courts have repeatedly concluded that a debt collector is not a 'creditor' subject to the requirements of the TILA."  *Medrano v. Great Mercantile Agency, Inc.*, No. 1:17-cv-1392, 2019 WL 2164634, at *4 (E.D. Cal. May. 17, 2019) *findings and recommendations adopted by* 2019 WL 3366108, (E.D. Cal. June 17, 2019); *see also Peters v. Fin. Recovery Servs., Inc.*, 46 F. Supp. 3d 915, 918 (W.D. Mo. 2014) ("Defendant does not fit within [TILA's] definition [of creditor] and is not subject to TILA because Defendant is a debt collector and not the person to whom the debt was originally payable."); *Neff v. Capital Acquisitions & Mgmt. Co.*, 238 F. Supp.2d 986, 991 (N.D. Ill. 2002) ("[B]ecause defendants purchased delinquent accounts, i.e., debt on which defendants charged interest, and extended no credit privileges of their own, defendants are 'debt collectors' subject to the FDCPA, not 'creditors' subject to TILA.").  Because Zwicker is not subject to TILA's requirements, these claims must also fail.

### D.   Racketeer Influenced and Corrupt Organizations Act ("RICO")

Rivera alleges that Zwicker has committed racketeering in violation of RICO under 18 U.S.C. § 1962.  ECF No. 1 at 2, 4.  "To prove a violation of the RICO statute, a plaintiff must plead that the violation occurred through the (1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity."  *In re Trilegiant Corp.*, 11 F. Supp. 3d 82, 97 (D. Conn. 2014) (internal quotation marks omitted).  A plaintiff must also demonstrate injury and causation.  *See id.*  Moreover, for RICO claims based on underlying allegations of fraud, a plaintiff's claims are subject to the heightened pleading standards set forth in Rule 9(b).  *See First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004) ("[A]ll allegations of fraudulent predicate acts [under RICO] are subject to the heightened pleading

16

requirements of Federal Rule of Civil Procedure 9(b).").  Under this standard, "[i]n addition to alleging the particular details of a fraud, the plaintiffs must allege facts that give rise to a *strong* inference of fraudulent intent."  *Id.* at 179 (internal quotation marks and citation omitted) (emphasis in original).

Rivera's allegations are insufficient to plausibly plead a RICO claim.  Even if one were to liberally read Rivera's Complaint to allege that Zwicker committed fraud as a RICO predicate, and even if one assumes his allegations of fraud meet the heightened pleading standards of Rule 9(b), he does not make any allegation as to what might constitute the RICO enterprise here.  A RICO enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct," which must be proven "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit."  *United States v. Turkette*, 452 U.S. 576, 583 (1981).  Here, Rivera makes no allegation of any organization, whether formal or informal, that might establish a RICO enterprise.  "Without allegations of a distinct RICO enterprise," Rivera's RICO claims must fail.  *Maguire v. Ameriprise Fin. Servs., LLC*, No. 3:22-CV-0128, 2022 WL 1718038, at *8 (D. Conn. May 27, 2022).

### E.       Regulation B of the Equal Credit Opportunity Act

Next, Rivera brings a passing claim under 12 C.F.R. § 1002, which is Regulation B of the Equal Credit Opportunity Act.  His allegations under this regulation are sparse.  He does not explain what specific provisions of the regulation Zwicker has allegedly violated, nor does he explain how Zwicker's actions ran afoul of the regulation.  Though courts in this Circuit read *pro se* submissions liberally, "we do not create arguments out of whole cloth."  *U.S. v. Bethea*, 388 F. App'x 20, 21 (2d Cir. 2010).  Liberal construction "cannot save *pro se* litigants who do not

present cognizable arguments," *Collins v. Blumenthal,* 581 F. Supp. 2d 289, 291 (D.Conn. 2008),

and courts "need not engage in rank speculations to manufacture a federal claim for *pro se*

plaintiffs." *Gonzalez v. Option One Mortg. Corp.*, No. 3:12-cv-1470 CSH, 2014 WL 2475893,

at *5 (D. Conn. June 3, 2014) (internal quotations omitted).  Because Rivera's allegations under

is 12 C.F.R. § 1002 are conclusory, I must dismiss this claim.

> ### F.      16 C.F.R. § 433

Rivera also alleges that Zwicker violated 16 C.F.R. § 433.3.  This regulation is an

exemption to the Federal Trade Commission's Holder Rule, which requires that all consumer

credit contracts contain a notice stating: "ANY HOLDER OF THIS CONSUMER CREDIT

CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR

COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED

PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER

BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR

HEREUNDER."  16 C.F.R. § 433.2 (emphasis in original).  Section 433.3 exempts sellers "who

ha[ve] taken or received an open end consumer credit contract before November 1, 1977."

Rivera does not provide any explanation as to how the Holder Rule or the exemption to it apply

here.  Again, I will not fashion an argument for Rivera out of whole cloth.  As such, I dismiss

this claim.

> ### G.      18 U.S.C. § 8, 28 U.S.C. § 3002(1)(B), and the House Joint Resolution 192 of
> ### 1933

Rivera appears to allege that Zwicker has no right to collect the debts at issue here

because, according to him, "all debt is the obligation of the Unites States."  ECF No. 1 at 4.  In

support of this argument, he cites 18 U.S.C. § 8, which is a criminal statute that defines the term

"obligation or other security of the United States,"  28 U.S.C. § 3002(1)(B), which defines the

term "Counsel for the United States" under the Federal Debt Collection Procedures Act, and

House Joint Resolution 192 of 1933, which "was adopted by Congress to prohibit contracts that

demand payment in gold" following the abandonment of the gold standard. *Sykes v. Shields*, No.

3:03-cv-2268 S, 2004 WL 1638237, at *2 (D. Conn. July 13, 2004). Rivera, stringing these laws

together, asserts that the United States has assumed all consumer debts and that Zwicker "has no

authority on behalf of the United [S]tates to collect . . . ." ECF No. 1 at 4.

As I have recently explained in a similar case brought by Rivera, "[t]hese claims are

legally and factually meritless." *Rivera v. Gatestone & Co.*, No. 3:23-cv-00035, 2023 WL

5530685, *6 (D. Conn. Aug. 28, 2023). Courts have uniformly rejected such claims, which are

sometimes referred to as the "vapor money," "unlawful money," or "redemption" theories of

debt. *See, e.g.*, *Osorio v. Connecticut*, No. 3:17-cv-1210, 2018 WL 1440178, at *5 (D. Conn.

Mar. 22, 2018) (calling such theories "indisputably meritless" and dismissing them as frivolous);

*Greene v. Pryce*, No. 15-cv-3527, 2015 WL 4987893, at *3 (E.D.N.Y. Aug. 18, 2015)

("Theories presented by redemptionists have been rejected by the courts as frivolous

arguments."); *McLaughlin v. CitiMortgage, Inc.*, 726 F. Supp. 2d 201, 214 (D. Conn. 2010)

("[T]hese theories have been universally and emphatically rejected by numerous federal courts

for at least the last 25 years."). Accordingly, I dismiss these claims.

### H.      Consumer Collection Agency Act ("CCAA")

Finally, Rivera alleges that Zwicker has failed to register as a debt collector in

Connecticut. ECF No. 1 at 7, 55. The Connecticut statute that requires debt collectors to obtain

the appropriate business license is the CCAA. *See* Conn. Gen. Stat. § 36a-801(a) ("No person

shall act within this state as a consumer collection agency, directly or indirectly, unless such

person has first obtained a required consumer collection agency license."). "It is well-settled,

however, that no private right of action exists under the CCAA and that enforcement lies with the Banking Commissioner." *Scheinman v. Glass & Braus LLC*, No. 3:18-CV-1551, 2020 WL 6875139, at *10 (D. Conn. Nov. 23, 2020).  Because Rivera does not have a right to bring a claim for the violation of the CCAA, I dismiss this claim.

## IV.    CONCLUSION

For the reasons above, I GRANT in part and DENY in part Zwicker's motion to dismiss. I grant the motion as to all claims except Rivera's claim that Zwicker failed to sufficiently verify the debt associated with account 32009 under 15 U.S.C. § 1692g(b).

IT IS SO ORDERED.

_____/s/_____
Michael P. Shea, U.S.D.J.

Dated:  Hartford, Connecticut
        September 18, 2023