UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILFRED RIVERA, JR.,<br>    *Plaintiff*,<br><br>    v.<br><br>ZWICKER & ASSOCIATES, P.C.,<br>    *Defendant*. | No. 3:23-cv-00116-MPS |

**RULING ON PLAINTIFF'S MOTION FOR RECONSIDERATION AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

    This case arises from attempts by Defendant Zwicker & Associates, P.C. ("Zwicker") to collect debts from Plaintiff Wilfred Rivera, Jr. on behalf of American Express. Rivera, proceeding *pro se*, filed this suit against Zwicker alleging violations of the Fair Debt Collection Practices Act ("FDCPA") as well as other federal laws and regulations. Following my ruling granting in part and denying in part Zwicker's motion to dismiss, Rivera filed a motion for reconsideration. And Zwicker has filed a motion for summary judgment on the sole remaining claim in the case.[1] For the reasons explained below, I deny Rivera's motion for reconsideration and grant Zwicker's motion for summary judgment.

---

[1] In the "Additional Material Facts" section of Rivera's response to Zwicker's motion for summary judgment, Rivera asserts that "[s]ufficient facts backed by Law and Acts have been expressed against ZWICKER that prove prima facie th[eir] liability for their violations and I pray the court indeed moves for sum[a]ry judgment in favor of I[,] the Plaintiff." ECF No. 44 at 16. Out of "an abundance of caution," Zwicker treated this section of Rivera's response as a cross-motion for summary judgment. ECF No. 46 at 1. I decline to do the same. Rivera did not file a separate motion for summary judgment; rather, his request comprised just one sentence in the conclusion of his response to Zwicker's motion. Nor did Rivera file a Local Rule 56(a)1 Statement or any new evidence in support of this request. Thus, even if I did treat his request as a cross-motion for summary judgment, it would be denied for the same reasons I grant Zwicker's motion for summary judgment.

I.  **MOTION FOR RECONSIDERATION**

   A.  **Legal Standard**

"Motions for reconsideration shall not be routinely filed and shall satisfy the strict standard applicable to such motions. Such motions will generally be denied unless the movant can point to controlling decisions or data that the court overlooked in the initial decision or order." D. Conn. L. Civ. R. 7(c). A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation marks omitted). Instead, "[a] motion for reconsideration should be granted only when the [moving party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (internal quotation marks omitted).

   B.  **Discussion**

Rivera has filed a motion for reconsideration regarding my ruling on Zwicker's motion to dismiss. ECF No. 35. Rivera does not point the Court to "controlling decisions or data that the court overlooked in [its] initial decision." Rather, he principally reiterates his previous arguments and advises me to review documents attached to his complaint that I have already considered. *See e.g.*, *id.* at 2 ("go back and look at all documents filed by I the Plaintiff"), 5 ("briefly re look at all the evidence provided"), 6 ("briefly re look at the documents provided in this case to see it is true and hold Zwicker liable for its deceptive practices violating Connecticut State Laws"). "Because a motion for reconsideration is not an opportunity to reiterate arguments that were previously considered and rejected, a motion for reconsideration on this ground is unwarranted." *Great Am. Ins. Co. v. Zelik*, 439 F. Supp. 3d 284, 288 (S.D.N.Y. 2020).

In addition to pointing to documents I have previously considered, much of Rivera's motion for reconsideration seems to rely on a new argument. In his complaint, Rivera alleges that "[Zwicker] purchased the debt *or are partnered with the alleged original creditor*." ECF No. 1 at 4 (emphasis added). In his motion for reconsideration, however, Rivera argues that "Zwicker is not partnered with AMERICAN EXPRESS in a Batman and Robin scenario, they have bought the accounts for themselves and are in collection for themselves." ECF No. 35 at 3. He argues that Zwicker's alleged ownership of the debt violates various provisions of the FDCPA. *See id.* at 3 (arguing that Zwicker's alleged ownership of the debt "is conspicuous and clear grounds in support of my claim under 15 USC 1692e(l4)"), 5 (alleging that Zwicker's alleged ownership of the debt violated 15 U.S.C. 1692j). As an initial matter, "new arguments are inappropriate on a motion for reconsideration." *Fragin v. Mezei*, No. 09-cv-10287, 2012 WL 6628021, at *1 (S.D.N.Y. Dec. 20, 2012); *see also Analytical Surveys., Inc.*, 684 F.3d at 52 (holding that a motion for reconsideration "is not a vehicle for . . . presenting the case under new theories" (internal quotation marks omitted)). In any case, this argument is unavailing because even if Zwicker did purchase Rivera's obligation from American Express, as I have previously explained, the FDCPA "does not prohibit debt collectors from stating the identity of the original creditor." ECF No. 34 at 10.

None of Rivera's remaining arguments warrant reconsideration. He argues that Zwicker violated 15 U.S.C. 1692d(2)'s prohibition of the use of "obscene or profane language" because he subjectively perceived the word "debt" to be obscene, ECF No. 35 at 1, but the test for obscenity under § 1692d(2) is an objective standard. *See, e.g.*, *Monahan v. NRA Grp. L.L.C.*, No. 3:10-cv-00638, 2011 WL 3901877, at *2 (D. Conn. Sept. 6, 2011) (explaining that "[c]ourts have interpreted section 1692d(2) to prohibit profanity and obscenity, as well as offensive language that is akin to profanity or obscenity," such as name-calling, racial or ethnic slurs, and other similarly

3

offensive derogatory remarks, and noting that "[a] court may rule as a matter of law that particular conduct does not go so far as to violate section 1692d(2)"). He argues that Zwicker made "false and misleading" statements under 15 U.S.C. § 1692e because, according to him, Zwicker is a debt collector and not a law firm, ECF No. 35 at 2, but a law firm may be a debt collector under the FDCPA. *See, e.g.*, *Cacace v. Lucas*, 775 F. Supp. 502, 504 (D. Conn. 1990) ("An attorney who regularly collects debts is a debt collector within the meaning of the 'FDCPA.'"). He cites caselaw that purportedly supports his "vapor money," "unlawful money," or "redemption" theories of debt, ECF No. 35 at 2, 6, but the very cases upon which he relies disavow these theories. *See, e.g.*, *McLaughlin v. CitiMortgage, Inc.*, 726 F. Supp. 2d 201, 214 (D. Conn. 2010) ("[A]ll three of these theories have been universally and emphatically rejected by numerous federal courts for at least the last 25 years."); *Goodwin v. Flagstar Bank*, No. 1:19-cv-859, 2019 WL 7582866, at *3 (W.D. Mich. Dec. 23, 2019) ("Courts have characterized the vapor money theory and claims premised on such as 'nonsense,' 'frivolous,' and 'lacking legal merit.' This Court reaches the same conclusion." (internal quotation marks and alteration omitted)), *report and recommendation adopted*, No. 1:19-cv-859, 2020 WL 255673 (W.D. Mich. Jan. 17, 2020).

In sum, Rivera provides no basis for reconsidering my ruling on Zwicker's motion to dismiss. As such, I deny his motion for reconsideration. The sole remaining claim for me to consider is Rivera's claim that Zwicker failed to sufficiently verify the debt associated with account 32009 under 15 U.S.C. § 1692g(b). It is to that claim that I turn next.

## II.     MOTION FOR SUMMARY JUDGMENT

### A.  Legal Standard

"Summary judgment is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*,

572 U.S. 650, 656-57 (2014) (internal quotation marks omitted).  In reviewing the summary judgment record, a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013).  "A genuine dispute of material fact exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013).  The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).  "Where no rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so slight, summary judgment must be granted."  *Id.* (internal quotation marks omitted).

### B. Factual Background

The following facts are taken from the parties' Local Rule 56(a) Statements and exhibits.  All facts are undisputed unless otherwise indicated.[2]

---

[2] The Local Rules of this Court require each party to present its version of the facts "in an orderly and structured manner that is designed to allow a judge to ascertain what facts are settled and what facts are in dispute." *Chimney v. Quiros*, 3:21-CV-00321, 2023 WL 2043290, at *1 (D. Conn. Feb. 16, 2023).  First, the party moving for summary judgment must file an enumerated statement of facts accompanied by specific citations to supporting evidence—the Local Rule 56(a)1 Statement—along with the cited admissible evidence supporting each individual statement of fact.  *See* D. Conn. L. Civ. R. 56(a)1, 3.  Then, the party opposing summary judgment must submit a responsive statement—the Local Rule 56(a)2 Statement—containing separately numbered paragraphs corresponding to the paragraphs set forth in the moving party's Local Rule 56(a)1 Statement and indicating whether he admits or denies the facts set forth by the moving party in each paragraph.  D. Conn. L. Civ. R. 56(a)2.  Each denial in the Local Rule 56(a)2 Statement must include specific citations to admissible evidence supporting the statement or denial, D. Conn. L. Civ. R. 56(a)3, such as an affidavit that has been "sworn to before an officer authorized to administer oaths, such as a notary public," or "an unsworn declaration, which is dated and signed by the declarant 'under the penalty of perjury,' and verified as 'true and correct,'" *Lamoureux v. AnazaoHealth Corp.*, No. 3:03-cv-01382, 2010 WL 3801611, at *1 (D. Conn. Sept. 22, 2010).  The non-moving party is also required to submit in a separate section of his Local Rule 56(a)2 Statement entitled "Additional Material Facts" a list of any additional

Zwicker is a law firm headquartered in Andover, Massachusetts. ECF 42-3 ¶ 2; ECF No. 44 at 5 ¶ 1. It has offices in over 30 states, including Connecticut. ECF 42-3 ¶ 2; ECF No. 44 at 5 ¶ 2. Zwicker's Connecticut office employs attorneys who are licensed to practice law in Connecticut. ECF 42-3 ¶ 2; ECF No. 44 at 5 ¶ 3.

On October 31, 2022, American Express National Bank ("American Express") placed an account of Wilfred Rivera with a number ending in 32009 ("account 32009") with Zwicker for collection.[3] ECF 42-3 ¶ 3. Zwicker sent Rivera a letter about this account on November 11, 2022.[4] ECF 42-3 ¶ 4; *see* ECF No. 42-4. The letter stated that Rivera "had an AMERICAN EXPRESS

---

material facts not included in the moving party's Local Rule 56(a)1 Statement that he contends "establish genuine issues of material fact precluding judgment in favor of the moving party." D. Conn. L. Civ. R. 56(a)2. These additional facts must also be followed by specific citations to admissible evidence. D. Conn. L. Civ. R. 56(a)3,

Rivera's Local Rule 56(a)2 Statement fails to comply with these requirements. He denies several of Zwicker's statements of fact without citing any supporting evidence. *See, e.g.*, ECF No. 44 at 5-6 (denying "point 4" and "point 11" of Zwicker's Rule 56(a)(1) statement without citing evidence supporting the denials). Though his submission also includes a sworn affidavit, only one of his denials cite to this document. *See id.* at 6 (citing to the "Affidavit of Facts" in response to Zwicker's "point 13"). Other denials cite generally to the "Additional Material Facts" section of his submission, which is replete with conclusory and unsubstantiated assertions and rehashes many of the legal arguments from his prior filings, *see id.* at 8-16, or to the attached exhibits, which are unauthenticated and inadmissible, *see id.* at 17-36.

"Although a court is required to read a self-represented party's papers liberally and interpret them to raise the strongest arguments that they suggest, unsupported allegations do not create a material issue of fact and do not overcome a properly supported motion for summary judgment." *Lindsay v. Cook*, No. 3:19-cv-1486, 2021 WL 5827080, at *2 (D. Conn. Dec. 7, 2021) (internal citations, alteration, and quotation marks omitted). Accordingly, I have considered Rivera's submissions to the extent they are supported by admissible evidence, but I treat as admitted the properly supported factual statements in Zwicker's Local Rule 56(a)1 Statement that are met with denials that have not been properly supported with evidence in the record. *See* Fed. R. Civ. P. 56(e)(2); D. Conn. L. R. 56(a). Where Rivera relies on portions of his affidavit that would not be admissible into evidence, I have not considered them. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *Wahad v. Fed. Bureau of Investigation*, 179 F.R.D. 429, 435 (S.D.N.Y. 1998) ("When an affidavit does not comply with these basic requirements, the offending portions should be disregarded by the court.").

[3] Rivera asserts that Zwicker "in fact purchased the debt account via a [forward flow agreement] for collection for its[elf]," but does not provide a citation or set forth any admissible evidence in support of this statement. ECF No. 44 at 5 ¶ 4.

[4] Rivera contends that he did not receive this letter, ECF No. 44 at 2 ¶ 14, and that Zwicker's "initial form of communication with [him] was their dunning letter dated 12/06/22," *id.* at 5 ¶¶ 5-7. But he has not set forth any evidence indicating that the letter was not *sent* or that the document Zwicker submitted is not an authentic copy of the letter.

account with account number ending in 32009," on which he owed $1225.26 as of November 3, 2022. ECF No. 42-4 at 4.

Rivera sent a letter to American Express on November 14, 2022. ECF No. 42-3 ¶ 5; ECF No. 44 at 5 ¶ 8. American Express forwarded this letter to Zwicker on November 29, 2022. ECF No. 42-3 ¶ 5; ECF No. 44 at 5 ¶ 9; *see* ECF No. 42-5; *see also* ECF No. 44 at 5 ¶ 9.

On December 6, 2022, Zwicker sent Rivera a cover letter and seven credit card statements for account 32009.[5] ECF No. 42-3 ¶ 6; ECF No. 44 at 5 ¶¶ 6-7, 6 ¶ 11; ECF No. 42-6. In the cover letter, Zwicker explained that it had received a "debt validation request…concerning the

---

[5] In his affidavit, Rivera asserts that "ZWICKER has attempted to validate the alleged debt for account ending in 32009 by erroneously sending statements for an account ending in…01004." ECF No. 44 at 3 ¶ 27. This assertion is inconsistent with Zwicker's claims about what was included in its December 6 mailing, but it does not create a genuine dispute of material fact because it is conclusory. *See Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996) ("[C]onclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment."). Rivera does not elaborate on when he received the statements for the 01004 account, what else was included in that correspondence, or how the mailings he received from Zwicker differ from what Zwicker has averred and documented that it sent. ECF No. 44 at 1-3. He simply parrots my ruling on the motion to dismiss, in which I explained that § 1692g would not be satisfied if Zwicker had attached the wrong credit card statements to its December 6 verification letter. ECF No. 34 at 11-13. There are no other references to Zwicker's December 6 mailing in this affidavit, ECF No. 44 at 1-3, and Rivera has not presented any other evidence that supports this conclusory assertion.

Rivera does suggest in his Rule 56(a)2 statement that he received an "initial dunning letter [regarding the 32009 account]…dated 12/06/22," and that this letter—which he says was provided "earlier in the case"—was different from the December 6, 2022 correspondence that Zwicker attached as Exhibit C to its motion for summary judgment (ECF No. 42-6). ECF No. 44 at 6 ¶ 11. Apart from the fact that Rivera cites no admissible evidence to support this claim, his assertion is inconsistent with his other statements and filings. The cover letter that Zwicker has averred and documented that it sent Rivera on December 6 is identical to the annotated letter that was attached to Rivera's complaint, ECF No. 1 at 48, and that Rivera admits to having mailed back to Zwicker in January 2023, ECF No. 44 at 6 ¶ 12; ECF No. 42-7.

Rivera also admits that Exhibit D to Zwicker's motion for summary judgment (ECF No. 42-7) is an accurate reflection of his January 2023 mailing. ECF No. 44 at 6 ¶ 12. That mailing contained: (1) an annotated copy of Zwicker's December 6 letter identical to the one Rivera attached to his complaint, and (2) a document titled "Notice of Violations Under the FDCPA & Federal Laws under Tit[le] 18." ECF No. 42-7. Though the annotated letter and "Notice of Violations" identify a variety of alleged FDCPA violations—including that Zwicker violated 15 U.S.C. § 1692g because it "sent STATEMENTS which ARE NOT sufficient evidence of a debt"—neither references the 01004 statements or suggests that Zwicker sent statements with an account number different from the one referenced in the December 6 cover letter, i.e. account number 32009. *Id.* at 2-3. Nor has Rivera identified any other letters he sent Zwicker asserting that it had sent the wrong account statements. Because Rivera has not presented any specific evidence contradicting Zwicker's evidence as to the contents of its December 6 correspondence, I conclude there is no genuine dispute as to whether this mailing contained credit card statements for the 32009 account.

American Express account [ending in 32009]," and so it was "sending copies of statements and other relevant documentation to serve as validation of debt." ECF No. 42-6 at 2. The credit card statements indicate that they are for the "Account Ending 9-32009" and list Rivera's name and his P.O. Box or street address. *Id.* at 4-44. The most recent credit card statement, which had a closing date of December 2, 2022, showed a balance of $1225.26. *Id.* at 38.

Rivera received Zwicker's December 6, 2022 letter and responded to it on about January 12, 2023. ECF No. 42-3 ¶ 7; ECF No. 44 at 5 ¶¶ 6-7, 6 ¶¶ 11-12; ECF No. 42-7. Rivera's response consisted of an annotated copy of Zwicker's December 6, 2022 letter, along with a "Notice of Violations Under the FDCPA & Federal Laws under Tit[le] 18." ECF No. 42-7 at 2-3; *see* footnote 5, *supra*.

### C. Discussion

Rivera alleges that Zwicker violated 15 U.S.C. § 1692g(b) because it failed to validate the debt associated with the 32009 account. Section 1692g(b) provides, in relevant part, that a "consumer" may, within thirty days after receiving an initial notice from a debt collector under § 1692g(a), "notif[y] the debt collector in writing…that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor." If the consumer disputes the debt in accordance with this provision, "the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector." 15 U.S.C. § 1692g(b). As I have previously explained, ECF No. 34 at 12-13, credit card statements can provide valid verification of a debt. *See Ritter v. Cohen & Slamowitz, LLP*, 118 F. Supp. 3d 497, 502 (E.D.N.Y. 2015) (holding that a debt collector sufficiently verified a

8

debt when it sent copies of credit card statements, which "clearly contained the Plaintiff's name and home address, and included a charge-off in…the amount the Defendants claim is owed"); *see also Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 339, 370 (D. Conn. 2012) ("Verification of a debt requires only that the debt collector obtain a written statement that the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt." (internal quotation marks omitted)).

Here, Zwicker responded to Rivera's November 14, 2022 letter—which it received on November 29, 2022, and which it described as a "debt validation request"—by sending him seven credit card statements for the 32009 account. ECF No. 42-3 ¶ 6; ECF No. 42-6. Each statement listed Rivera's name and address, and the balance on the most recent statement matched the amount being demanded by Zwicker. ECF No. 42-6 at 4-44. Rivera received this letter and these statements.[6] ECF No. 42-3 ¶ 7; ECF No. 44 at 5 ¶¶ 6-7, 6 ¶¶ 11-12. No rational factfinder could find for Rivera in light of these undisputed facts. Accordingly, I grant Zwicker's motion for summary judgment.

### III. CONCLUSION

For the reasons above, I DENY Rivera's motion for reconsideration and GRANT Zwicker's motion for summary judgment. The Clerk is ordered to close the case.

---

[6] Section 1692g requires only that a copy of the debt verification be "*mailed to* the consumer by the debt collector," not that it be received. 15 U.S.C. § 1692g(b) (emphasis added). *See also Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 89 (2d Cir. 2008) ("The debt collector may resume collection activities [once] it has obtained verification of the debt, and has mailed a copy of the verification to the consumer."); *Hardaway v. Toyota Fin. Servs.*, No. 4:21-cv-194, 2022 WL 317758, at *4 (E.D. Tex. Feb. 2, 2022) (describing a debt collector's "statutory obligations" under § 1692g(b) as "mailing Plaintiff the name and address of the original creditor or verification of the debt and ceasing collection efforts"). But, as explained *supra*, it is undisputed that Rivera also received this correspondence.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
September 5, 2024